Union Pac. Ry. Co. v. Jarvi.

---

UNION PAC. RY. CO. v. JARVI.

(February 5, 1890.)

INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.

Rev. St. Wyo. § 2553, subd. 6, provides that in civil cases, "before the argument of the case is begun, the court shall give such instructions upon the law to the jury as may be necessary." Subdivision 7 provides that, "when either party asks special instructions to be given to the jury, the court shall either give such instructions as required, or positively refuse to do so, or give the instructions with modifications." In an action by an employe against his employer for personal injuries, there was evidence to sustain the allegations of the answer that plaintiff knew of the danger, and that it was unnecessary for him to go to the place where the danger existed, and where the accident occurred. The only instructions on the subject of contributory negligence were in regard to plaintiff's going to the place of the accident contrary to the rules of his employer. *Held*, that the question of contributory negligence, independent of any rule of the company, should have been submitted to the jury, under proper instructions, though the instruction requested did not state the law accurately. SAUFLEY, J., dissenting.

Error to district court, Albany county; M. C. SAUFLEY, Judge.

Action for personal injuries by one Jarvi against the Union Pacific Railway Company. Plaintiff had judgment, and defendant brings error. Reversed.

*Corlett, Lacey & Riner*, for plaintiff in error. *Mahoney, Minehan & Smyth*, for defendant in error.

CORN, J. The defendant in error brought suit against the plaintiff in error, alleging that on January 15, 1886, the defendant in the court below was the owner and operator of a certain coal mine; that plaintiff below was in the employ of defendant as a miner of coal therein; that in his occupation as miner it was necessary for plaintiff to frequently enter and pass through a part of what was known as the "Main Slope" of said mine; that, while so engaged in passing through a portion of the main slope, a large rock fell from the roof upon plaintiff's leg, and so injured it that it became necessary that it be amputated; that at the time, and prior thereto, the said rock was loose, insufficiently supported, and dangerously insecure in its place in the roof; that it was the duty of the defendant to keep said main slope in good repair, and not to allow said rock to become insecure, and to furnish plaintiff with a safe place in which to perform his work as such employe; that the defendant, well knowing its condition, negligently and carelessly failed to perform its duty; and that plaintiff had no knowledge of its dangerous condition, and

Union Pac. Ry. Co. v. Jarvi.

no reason to anticipate it, and that he was free from negligence in respect to the cause of his injuries.

The defendant answered by a general denial, and also set up in a second defense that plaintiff, at the time of the accident, was negligently at a place in the mine at a distance from the place where, by his employment, he was required to be, and a more dangerous place, without the order of defendant, and without its knowledge or consent; that, although knowing that at that time and place there were great and unusual hazards of the kind which caused his injuries, the plaintiff was not exercising reasonable or ordinary care to protect himself; and that such failure of plaintiff to exercise ordinary care contributed to the injuries.

The evidence tended to show that plaintiff was in the habit of going from his working place to the junction of the main slope and the slope or entry leading to his working place, for the purpose of obtaining cars to remove his coal; that this was a specially dangerous point, owing to the frequent falling of masses of rock, and was known to be so by said miners; that the main slope itself was dangerous, and was so known to be by the miners; that these places were also known by the superintendent and mining boss to be dangerous, but there was also evidence tending to show that the junction where the accident occurred, by blasting out the "bastard rock," had recently been made as safe as it could be reasonably made. There were "drivers" whose duty it was to remove the cars of coal, and return empty cars to the miners, placing them near to their working places, and at a point between the working and the junction, so that it would not be necessary for the miners to go to the dangerous place. There is evidence tending to show that there were enough drivers to furnish all the miners with all the cars they required, in this way, and that each miner, by waiting to have the cars brought to him, would obtain all the cars he required. There was also evidence that certain of the drivers brought the cars to the junction, and required the miners to come there for them. While at this point, for the purpose of obtaining cars, this fall of rock occurred, and plaintiff was injured. There was evidence that a rule existed prohibiting the miners from going to this point,

and also that the rule had fallen into disuse, or, at least, that it was not enforced or insisted upon, and was perhaps unknown to the plaintiff. There was a verdict for plaintiff of $12,500, and defendant brings the case to this court.

There is a great number of errors assigned, only a part of which it will be necessary for us to consider in detail.

The plaintiff in error insists that the court erred in its charge to the jury, and also in refusing certain instructions requested by it. The charge of the court, in so far as it has reference to the negligence of the defendant or any contributory negligence of the plaintiff, was in full as follows: "The court charges you that when the plaintiff, Jarvi, entered the service of the defendant company, he took upon himself the risks of those dangers to his life or limb which the testimony may show are ordinarily incident to mining service. He likewise took upon himself the risks of such accidents or injuries as might befall him as a result of the negligence of a fellow-servant, of whom the mining boss, Rogers, in this case, was one. While the plaintiff is held in law to have assumed these risks, the defendant owed to him duties of protection and care. It was the duty of the defendant to provide for the plaintiff a working place which, under the circumstances and considering the situation, common prudence would pronounce reasonably safe, and to construct and maintain within its mines, at the proper places, such practicable appliances or artificial means as ordinary prudence and forethought would suggest as necessary for the safety of its miners. This being done, it is correspondingly the duty of the plaintiff, as one of the miners, to conform to any reasonable rules and requirements on the part of the company which were made with a view to the fuller safety of the employes. Instruction No. 1. That if you believe from the evidence in this case that the plaintiff received the injuries complained of by him; that they were caused either by the falling of a rock from the roof of the mine, or from its displacement from a portion between the coal and sandstone formations; that the superintendent of the mines either had notice that there were reasonable grounds to apprehend such falling or displacement, or, by exercising ordinarily

Union Pac. Ry. Co. v. Jarvi.

careful inspection, could have ascertained that there was a reasonable probability of such falling or displacement; and that it was practicable to prevent it by artificial means or appliances,—then the finding must be for the plaintiff. This instruction, however, is not to be taken as the whole law of the case. Its converse will be found in instruction No. 2, and its modification in instruction No. 3. Instruction No. 2. If the causes which operated to produce the falling or displacement of the stone were so hidden in their nature or character as that the defendant by its agent (in this case, the superintendent) could not, by the exercise of reasonable care and skill of inspection, have discovered them, you should find for the defendant; unless you further believe from the testimony that the superintendent had notice that such causes existed and would likely operate. Instruction No. 3. Although you may believe from the evidence that the defendant was negligent in the respects indicated in instruction No. 1, yet if you further believe from the evidence that the defendant had, prior to the injury of plaintiff, prescribed a rule the effect of which in part was a prohibition to plaintiff to go for his empty cars into that particular part of the mine where the accident occurred, and that notice of this rule was either given specifically to plaintiff in a way in which he fairly understood it, or was promulgated by the defendant in such a general public and plain way that the plaintiff had a fair opportunity to know it, that the plaintiff, having such notice of the rule or opportunity to know it, violated it, and that the accident would not have occurred if he had not violated it, then, in such case, the finding should be for the defendant upon the ground of plaintiff's contributory neglect; that is, that plaintiff contributed to his injury by his own neglect of proper caution. But upon this particular head you are further instructed, in modification of the preceding part of this instruction, that if you believe from the testimony that the defendant's superintendent, by a general license to the miners, encouraged them, or, knowing their habits, suffered them, without remonstrance, to habitually come into the straight slope for their empty cars, such license would operate to abolish or suspend the rule, and the plaintiff could not, under such circum-

stances, be held to have been guilty of contributory negligence."

This was the entire charge of the court affecting the question of negligence. Plaintiff in error requested the following instruction, which was refused by the court: "The plaintiff, as an employe in the mine, was required at all times while so employed to exercise due care and diligence for his own protection; in other words, the same measure and degree of care is required of the plaintiff as is required of the defendant company. There is, however, this one difference, that, even if you should find from the evidence that the defendant company failed to exercise ordinary care, and that such failure caused or contributed to the injury complained of, still, if you should find from the evidence that the plaintiff also failed to exercise ordinary care, and that such failure in any manner contributed to his injury, then you must find for the defendant company."

An examination of the charge of the court, as given to the jury, will show that they were instructed, as to contributory negligence, only as predicated upon a violation by the defendant in error of an alleged rule of the defendant company, requiring employes to remain off the main slope. If there was evidence before the jury tending to show that defendant in error was guilty of negligence in going into a place unnecessarily, which was more than ordinarily dangerous, and that he knew, or might by ordinary care have known, that it was more than ordinarily dangerous, and that such negligence directly contributed to the injury, it was proper that the jury should have been instructed upon that view of the case, even if the alleged negligence did not consist in violation of a rule of the company, and even if the company had no rule upon the subject. There was evidence that the place was dangerous, and known to be so; that it was a "bad place;" that it was so notorious, by reason of the frequent fall of rock there, that the mine-boss must have known it; that special pains had been taken to blast it out so as to make the roof safe, but that it remained dangerous, by reason of the frequent falling of rock from the sides, and that this was necessarily known to those who passed frequently about it; that the main slope is known by all miners to be dangerous, and that a "man-

way" is provided for this reason, in order that miners may not be compelled to go upon the main slope; that it was not necessary for defendant in error to go there, for, if he remained at his working place, he would receive the same number of cars as if he went for them himself. The evidence upon these points was conflicting, and should have been submitted to the jury, under proper instructions.

But it is urged that the instruction requested does not state the law accurately, and, further, that, at most, it is but a non-direction, upon which error cannot be predicated. In support of this proposition, we are cited to Thompson on Trials, § 2341. "It is, then, a general rule of procedure, subject in this country to a few statutory innovations, that mere non-direction, partial or total, is not ground of new trial, unless specific instructions, good in point of law, and appropriate to the evidence, were requested and refused. A party cannot, by merely excepting to a charge, make it the foundation for an assignment of error that it is indefinite or incomplete. The rule rests upon the soundest foundations." In the first place, this is not a mere non-direction. In the latter part of instruction No. 3 of the charge of the court the jury are informed, in substance, that, in the absence of an enforced rule of the company prohibiting plaintiff from going to that place for his cars, the plaintiff could not be held to have been guilty of contributory negligence. The language apparently limits the defense of contributory negligence to the violation of an alleged rule. But the rule as stated by Thompson, even if applicable to this case, is not the rule in this jurisdiction. Subdivision 6, § 2553, Rev. St. Wyo., provides that in civil cases, "before the argument of the case is begun, the court shall give such instructions upon the law to the jury as may be necessary;" and his duty to do this is not excused by the failure of counsel to request "specific instructions, good in point of law, and appropriate to the evidence;" for subdivision 7 of the same section provides: "When either party asks special instructions to be given to the jury, the court shall either give such instructions as required, or positively refuse to do so; or give the instructions with modifications." We think the question of contributory negligence, regardless of the existence of any rule of the defendant company, clearly arises upon the pleadings and the evidence in this case, and it should have been submitted to the jury, under proper instructions from the court, and the failure to do so was error, on account of which a new trial should have been granted. The judgment of the court below is reversed, and a new trial ordered.

VAN DEVANTER, C. J., concurring.

SAUFLEY, J., (*dissenting.*) I dissent because—*First.* The plea of contributory neglect is not broad enough to put in issue any neglect on the part of Jarvi, except such as may result from a violation of the rules of the company. It charges that the defendant was, at the time of receiving the injury, "fifty yards from the place where, by his employment, he was required to be, and in a place more dangerous than that required by his employment." By the word "employment," as here used, is meant "business" or "service." The very nature of this business required him, in the absence of any prohibitory rule, to be in the main slope as well as in the dip slope of the mines. That is to say, he was not a fixture or a post, to remain immovably at a designated point, unless he contracted to do so, or unless a rule of the company, which he fairly understood, circumscribed his locomotion within a given radius. Having been hired as a miner, his business—his employment—was to dig coal, load cars, and to do such other work as the custom in such places demands of employes in this service. Any limitation upon this must be by a rule or special direction. This record affirmatively shows that the defendant below rested his case on that rule,—a rule which it was contended forbade the plaintiff from going into the main slope for his empty cars; and at the same time, by its original answer and by the emphatic testimony of its own officers, repeated over and over, affirmed that the place was not simply not dangerous, but that it was a positively safe place. Having, both by their answer and by their own testimony, limited the neglect charged to the plaintiff to a violation of a rule, the instruction should have been no broader.

*Second.* I dissent because there is an utter dearth of testimony to show that the plaintiff

either knew, or had a reasonably fair opportunity to know, before or at the time of the injury, that the place in the main slope which some witnesses spoke of as an "unsafe place" was more than ordinarily dangerous. He is an untutored foreigner, who delivered his testimony through an interpreter. He had not been engaged in that part of the mine longer than two weeks. Other miners, who had been there months, and perhaps years, were of the opinion, from the fact that they had seen some rocks fall from the roof, that it was dangerous; but no one testified that such fact, or even opinions based on such fact, had been communicated to Jarvi.

*Third.* Even if the plea of contributory neglect be as broad as the majority of the court hold, and even if the roof of the main slope was extraordinarily dangerous, and Jarvi absolutely knew it, I dissent, because the testimony shows, beyond all doubt and without contradiction, that the injury did not occur within the main slope, nor was it caused by a stone or other substance falling from the roof of the main slope,—the place which is spoken of as the dangerous place. It occurred in the dip slope, near its point of junction with the main slope. At this point, a lump of fire-clay fell from its position between the wall of coal and the sandstone formation, striking plaintiff, and crushing his leg. I quote the record. Louis R. Myers was the superintendent of the mine. He was introduced by the defendant company. On page 91 appears this question and answer: "*Question.* What kind of stone was that that fell on Jarvi? *Answer.* Fire-clay. *Q.* That did not come from the roof? *A.* No." If it was fire-clay, it could not have come from the roof of the main slope; because, as is admitted by every witness, and as the prevailing opinion possibly shows, the fire-clay had all been blasted down to the sandstone in the roof of the main slope. Further, on page 95, appear additional questions and answers by this witness: "*Question.* You think that stone came from the south-east side? *Answer.* I know where it came from; it came from the left-hand side, going down in the dip slope. *Q.* From the left-hand side of the dip slope or the main slope? *A.* The left side of the dip slope. *Q.* You mean from the south side of the dip slope? *A.* Yes. *Q.* Which side of the main slope? *A.* It did not

come from the main slope at all; it was on the dip slope." Rogers, the mining boss, testified on behalf of the defendant company. On page 103 these questions and answers appear: "*Question.* Did you see where the stone came from which hurt Jarvi? *Answer.* Yes, sir; it came from the point of this pillar. *Q.* Did it come from the roof? *A.* It came from the top of the coal. The road was going down that way to the dip slope, and it fell from the top of the coal. It did not come from the roof." There was no testimony in contradiction of this, but some witnesses, who did not witness the infliction of the injury, and supposing that it occurred by the falling of stone from the roof, spoke of the supposed place as one believed by them to be a dangerous place. In view of the fact that the injury did not occur by any falling of stone from the roof of the main slope, of what relevancy is that portion of the prevailing opinion which assigns as a ground for reversal the fact "that the main slope is known by all miners to be dangerous, and that a manway is provided for that reason, in order that miners may not be compelled to go upon the main slope; that it was not necessary for the defendant in error to go there?" Suppose it was not necessary for him to go there, what avails such a declaration, if he was not injured there?

*Fourth.* I dissent further from the opinion of the court in the interpretation given of section 2553, Rev. St. By the fifth subdivision of that section each party is, at the close of the evidence, given the privilege of moving for special instructions before the court formally instructs the jury. In this case counsel for the plaintiff in error asked many instructions, intended, presumably, to cover their theory of the case. Not one of these so offered had any application to the doctrine of contributory neglect, except as it might have been inferred from the alleged violation of the rule prohibiting the miners from going into the main slope. The nearest approach to it, if it can be called an approach at all, is found in the refused instruction quoted in the opinion of Justice Corn. That instruction is so palpably erroneous that it needs only to be read to discern the error. It states to the jury some general propositions, a part of which is not the law of this case. By it the court is asked to say to the

jury that the same degree of care is required of Jarvi that is required of the company. This is wholly misleading. It is true that Jarvi should, in his particular sphere, have exercised a reasonable care for his own safety, and the company should have in its particular department exercised a reasonable care to provide for the safety of the miners. But the two spheres or departments are entirely distinct, and the institution of a comparison between the diligence or care which should characterize the one with that which should characterize the other would be misleading and confusing to the jury. It is as faulty as an attempted parallelism between two individuals of different orders and genera,—as between a fowl and a quadruped. By the residue of the instruction, the court is asked to tell the jury that if plaintiff failed to exercise ordinary care, and that such failure contributed to the injury, they should find for the defendant. Ordinary care in respect to what? Under the generous scope of this instruction, the jury might have concluded that Jarvi failed to exercise ordinary care in respect to any of his duties as a miner, no matter how little in law such neglect affected his right of recovery, and found against him. The instruction was too vague and general, even if it had embraced a correct principle, to be of any proper service to a jury. This instruction the court was bound to refuse. The question then remains, could it have been modified? If we are to stick to the letter of the statute, as Judge Corn's opinion would seem to indicate, the court's whole duty would have been at an end, if the court could neither grant it nor modify it. If by "modification" is meant refusing it outright, and writing another, which bore no resemblance to it either in phraseology or in law, then it might have been susceptible of modification; but such is not my understanding of the word. Briefly stated, my view is that when a party rests his case upon a particular line of prosecution or defense, and only requests that instructions be given in harmony with that line, and fails to invite the attention of the court to any other view or theory of the case which the testimony might possibly establish, the failure of the court to give, of its own motion, an instruction predicated on this un-

mentioned view, is a case of non-direction, which is not reversible error. I hold that the case of plaintiff in error falls within this principle. I do not see how the trial judge, after the defendant had planted itself upon the proposition that the place was not extraordinarily dangerous,—nay, not even ordinarily so,—could have conceived that this generalization of the law on care and diligence was intended to refer to the supposed neglect of Jarvi in going into a dangerous place, unless the judge had just simply guessed it. As this record fairly shows, it was beyond the range of reasonable conjecture.